UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**SOUTHERN DIVISION at LONDON**

LESLIE LAWSON,                    )
                                  )
    Petitioner,               )
                                  )        Civil Case No.
v.                                )        6:15-cv-038-JMH-CJS
                                  )
AARON SMITH, WARDEN,              )        **MEMORANDUM OPINION & ORDER**
KENTUCKY STATE REFORMATORY,       )
                                  )
    Respondent.               )

\*\*\*

A state prisoner seeking a Writ of Habeas Corpus in federal court faces a tall task. At every turn, road blocks present potentially fatal obstacles. He must not have run afoul of state procedural rules. He must have exhausted all possible avenues of relief in state court. He must have brought his claim within the time allowed. And if the state court already considered his claim, the petitioner must show the state court's decision was contrary to or an unreasonable application of federal law as established by Supreme Court holdings. Any misstep along the way closes the road to relief. He must run the entire gauntlet.

Congress and courts have erected these barriers to ensure that federal courts issue the writ only when the most serious constitutional errors infect a prisoner's case. This is because, in our system, state courts are plenty capable of hearing and deciding federal constitutional claims. *See Burt v. Titlow*, 571

1

U.S. 12, 19 (2013). Error correction is best left to state-level appeals, not federal habeas review. *See Woods v. Donald*, 135 S.Ct. 1372, 1375 (2015) (per curiam).

Petitioner Leslie Lawson argues that this case involves errors requiring federal-court intervention. Lawson claims that he received ineffective assistance of trial counsel in violation of the Sixth Amendment. So he filed a Petition for Writ of Habeas Corpus. [DE 1]. The state responded [DE 7], Lawson replied [DE 11], the magistrate judge recommended dismissing the petition [DE 19], and Lawson filed objections [DE 24]. A review of the record shows that during the nearly 20 years Lawson has spent litigating this case, he has encountered the types of hurdles that often preclude habeas relief. He attempts to clear them but fails. And for the reasons stated herein his Petition for Writ of Habeas Corpus is **DENIED** and **DISMISSED WITH PREJUDICE**.

## I. Background

Harold Brown and Leslie Lawson spent June 15, 1998 with their girlfriends at a lake before heading home. [DE 7-1, p. 95]. That same day, Robert Jenkins's home burned down. After an investigation, the Kentucky State Police determined Lawson and Brown were responsible. Lawson was indicted [*Id*. at p. 1], tried, convicted, [*Id*. at p. 2], and sentenced. [*Id*. at p. 3]. He claims it was all done in violation of the Constitution.

Lawson made his case to the Kentucky courts. First on direct appeal, then on collateral attack. The state courts rejected his claims. So he comes to this Court on habeas corpus. And in his petition, Lawson makes six claims—each of which center on ineffective assistance of trial counsel ("IATC"). [DE 1]. To fully analyze his claims, the Court must first consider what happened at trial.

During the investigation, Jenkins told the Kentucky State Police that he suspected Lawson and Brown were responsible for the crime. The fire damaged one room of the home; it also caused smoke and water damage throughout the residence. [DE 7-1, p. 95]. Lawson faced charges of arson, burglary, and persistent felony offender. The state tried Brown and Lawson together during a three-day trial in March 1999. [*Id*. at p. 2].

At trial, Lois Lyon, Jenkins's neighbor, testified the she witnessed an older model four-door gray Oldsmobile in Jenkins's driveway on the day of the fire. [DE 1-1, p. 5]. Lyon also testified that she saw a woman, Barbara Flannelly behind the wheel and saw Flannelly's uncle get into car. [*Id*.]. Lyon testified that a short time later, she heard firecrackers explode, noticed smoke coming from Jenkins's home, and called 911. [*Id*.]. KSP officers later found the vehicle at the home of Brown's mother. [*Id*.].

Flannelly, Brown's former girlfriend, and Karen Jones, Lawson's former girlfriend, testified at trial for the government. [DE 7-1, p. 95]. The women testified that the two couples had gone on a trip to a lake and, on the way back, Lawson spotted Jenkins's truck. [*Id.*]. The women testified that Lawson said: "There that SOB is. Let's get him while he ain't home." [*Id.*]. Jenkins, who had worked as a police informant, had been referred to as a "rat," according to testimony at trial. [*Id.* at 96]. Flannelly testified that she dropped Lawson and Brown off in Jenkins's neighborhood while driving back from the lake. [*Id.*]. Lawson instructed Flannelly to drive to Jenkins's house to verify that Jenkins was not home before returning to pick up Brown and Lawson. [*Id*]. Jones and Flannelly testified that before dropping off the suspects, Lawson told Brown, "let's hoodoo that punk." [*Id.*]. No one answered when the women rang Jenkins's doorbell, so they revved the car's engine to signal to Brown and Lawson that the home was empty. [*Id.*]. Both women testified that they then met up with Flannelly's uncle and went to grab a bite to eat. [*Id.*]. When they returned, they heard firecrackers and saw smoke coming from Jenkins's home. [*Id.*].

Jones and Flannelly also testified that after the fire they saw Brown and Lawson with an air rifle, and a leather case that contained a wrench. [*Id.*; DE 1-1, p. 5]. Jenkins testified that they were his items and that he had seen them on the morning of

4

the fire. [DE 7-1, pp. 96–97]. An arson investigator testified that someone intentionally used a lighter or match to ignite the blaze with some type of combustible material, such as newspapers or magazines. [*Id.* at p. 97].

Lawson's counsel argued that the Commonwealth failed to satisfy the burden of proof because the "fire could have started by accident because no witness nor any physical evidence placed them inside the Jenkins home." [*Id.* at p. 95]. The jury disagreed and convicted Lawson on all counts. [*Id.* at p. 2]. Because he had several prior felony convictions, Lawson was sentenced to a total of 80 years in prison. [*Id.* at p. 3].

Lawson filed a direct appeal, and the Kentucky Supreme Court affirmed the conviction and sentence. *See Lawson v. Commonwealth*, 53 S.W.3d 534 (Ky. 2001). In that appeal, Lawson made the following claims relevant here: the trial erred by (1) giving Lawson and Brown nine peremptory challenges (every party agrees that defendants were entitled to two more peremptory challenges for a total of 11); (2) failing to grant a directed verdict because the Commonwealth had no direct physical evidence showing that Brown or Lawson entered the Jenkins home and started the fire; (3) admitting hearsay evidence related to Lawson's character and prior bad acts.

On the peremptory challenges, the state Supreme Court ruled that "neither Appellant properly preserved this issue for our review" because neither "objected to the trial court's determination of the number of challenges authorized by RCr 9.40." *Lawson*, 53 S.W.3d at 545. As to the directed verdict, the court found that "circumstantial evidence is sufficient to support a criminal conviction" and "the jury could reasonably infer Appellants' guilt on the basis for the evidence presented by the Commonwealth." *Id.* at 548. And on the character evidence, the court ruled that Lawson's counsel had failed to object to the testimony at trial and thus failed to preserve the issue for appeal. In addition, the court did "not find a substantial possibility that the exclusion of this testimony would have resulted in a different verdict." *Lawson*, 53 S.W.3d at 549. Four months later, the Supreme Court rejected Lawson's request for a rehearing. [DE 7-1, p. 161].

Lawson then filed a pro se Motion to Vacate, Set Aside, or Correct Sentence in state court under Rule 11.42 of the Kentucky Rules of Criminal Procedure. [DE 1-2]. In that Motion, filed in August 2002, Lawson first claimed that he received ineffective assistance of trial counsel ("IATC").

First, Lawson argued that his counsel provided ineffective assistance in failing to object to the trial court's misallocation

of only nine peremptory challenges. [DE 1-2, p. 5]. Next, Lawson argued counsel erred by failing to object when, during voir dire, a juror stated that he knew Lawson because the juror worked at the detention center. [*Id.*] Lawson contended that counsel should have moved for a mistrial because the comment tainted the entire jury pool. Third, Lawson argued counsel should have objected to character and prior bad act evidence. [*Id.* at p. 6]. Lawson then argued that counsel failed to call various witnesses for the defense who could have provided impeachment or alibi evidence at the time for the fire. [*Id.* at pp. 6, 37–42]. Fifth, Lawson claimed counsel failed to present mitigating evidence. [*Id.* at p. 43–46]. On that issue, Lawson argued that witness Tony Griffith had seen Darrell Blevins outside the Jenkins home shortly before the fire (Lawson argues Blevins conspired with Jenkins to burn down the home for insurance money). Lawson requested that counsel show Griffith a picture of Blevins while Griffith testified and ask him whether he recognized the man in the picture. [*Id.*]. Counsel did not do so. Lawson also argued that counsel failed to impeach Barbara Flannelly. [*Id.* at pp. 46–51]. Lawson finally contended that the cumulative effect of the errors led to ineffective assistance. [*Id.* at p. 55].

The Laurel Circuit Court did not hold an evidentiary hearing or appoint counsel before overruling Lawson's motion. [DE 7-1, p. 162–77]. The state court of appeals affirmed on all issues except

the preemptory challenges. [DE 1-5]. The appellate court remanded the case to the trial court to hold an evidentiary hearing on possible prejudice that occurred at trial. The state Supreme Court denied the Commonwealth's petition for discretionary review. [DE 7-1, p. 389]. Lawson *did not* seek discretionary review on any part of the court of appeals' ruling.

On remand, the Laurel Circuit Court held an evidentiary hearing in October 2010. It is here where Lawson first secured postconviction counsel. The hearing dealt solely with peremptory strikes since Lawson did not seek review of his remaining claims. During the hearing, Lawson identified two jurors he would have struck (Jurors 44 and 47). One juror was not "forthcoming with her answers" and Lawson sensed bad vibes. [DE 1-6, pp. 4-5]. Lawson further claimed the two jurors were "gathering together." The circuit court again denied relief, and the court of appeals again reversed. [DE 1-6; DE 1-7]. The appellate court ruled that, under state law, prejudice is presumed when a defendant is forced to exhaust peremptory challenges based on a trial court's misallocation. [DE 1-7, p. 8]. The state again sought discretionary review from the Kentucky Supreme Court, and the court heard the appeal.

The Supreme Court reversed the court of appeals in June 2014, holding that automatic reversal for misallocation of peremptory

strikes is inapplicable on collateral review. [DE 1-8]. The court further found that Lawson failed to satisfy his IATC claim under *Strickland v. Washington*, 466 U.S. 668 (1984) because Lawson did not demonstrate prejudice. [*Id*. at pp. 5-7]. Three months later, the state Supreme Court denied Lawson's petition for rehearing. [DE 1-9].

Lawson then filed the current Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254, arguing that the following errors gave rise to IATC claims:

> (1) trial counsel's failure to object to the admission of highly prejudicial hearsay, irrelevant testimony and KRE 404 evidence. [DE 1, p. 24];
>
> (2) trial counsel failed to investigate and present alibi witnesses, and the Kentucky Court of Appeals' ruling to the contrary is an unreasonable application of *Strickland*. [*Id.* at 33];
>
> (3) trial counsel failed to investigate and present reasonable evidence of an alternative perpetrator, and the Kentucky Court of Appeals' ruling to the contrary is an unreasonable application of *Strickland*. [*Id.* at 38];
>
> (4) trial counsel's failure to object to the trial court's erroneous allocation of too few peremptory strikes, and the Kentucky Supreme Court's decision to the contrary was both contrary to, and an unreasonable application of *Strickland*. [*Id.* at 42];
>
> (5) trial counsel's failure to both impeach Flannelly's and Jones's testimony, and to argue the impossibility of their testimony. [*Id.* at 58];
>
> 6) the cumulative effect of trial counsel's errors constitutes IATC. [*Id.* at 60].

The state filed a response [DE 7], to which Lawson replied. [DE 11]. The magistrate judge issued a report and recommendation on March 7, 2018 in which she recommended that this Court deny and dismiss Lawson's petition, deny a certificate of appealability and enter judgment in favor of respondent. [DE 19, p. 48]. Lawson filed objections to the magistrate judge's recommended disposition, making this matter ripe for review. [DE 24].

## II. Standard of Review

Under Federal Rule of Civil Procedure 72, a party may object to and seek review of a magistrate judge's report and recommendation. *See* Fed. R. Civ. P. 72(b)(2). "A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(c). Any objections must be stated with specificity. *Thomas v. Arn*, 474 U.S. 140, 151 (1985). "An 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context." *VanDiver v. Martin*, 304 F.Supp.2d 934, 937–38 (E.D. Mich. 2004). "[V]ague, general or conclusory objections . . . [are] tantamount to complete failure to object." *Cole v. Yukins*, 7 F. App'x 354, 356 (6th Cir. 2001).

## III. Analysis

**A. Claim I: Failure to object to hearsay and character evidence.**

In his first claim, Lawson argues that his trial counsel was ineffective for failing to object to "highly prejudicial hearsay, irrelevant testimony and KRE 404 evidence." [DE 1, p. 24]. Specifically, Lawson argues that much of Detective Riley's testimony was improper. The magistrate judge rejected Lawson's argument on three grounds: (1) Lawson had procedurally defaulted; (2) the claim failed § 2254(d) review; and (3) the claim failed under de novo review. Lawson objects to each of the magistrate judge's determinations. We begin with procedural default.

### *(i)* *Procedural Default*

Procedural default exists to "ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism." *Martinez v. Ryan*, 566 U.S. 1, 9 (2012). Procedural default bars a petitioner's claims when:

> (1) the petitioner fails to comply with a state procedural rule; (2) the state courts enforce the rule; (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim; and (4) the petitioner cannot show cause and prejudice excusing the default.

*Guilmette v. Howes*, 624 F.3d 286, 290 (6th Cir. 2010) (en banc).

In most situations, then, procedural default occurs when a state rejects a petitioner's claim because he failed to comply with state procedural rules.

But procedural default can also bar claims that the petitioner failed to *exhaust* on state collateral review. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). Exhaustion is itself a distinct limit on federal habeas review. *See* 28 U.S.C. § 2254(b). Under the exhaustion doctrine, a prisoner must first go through all available remedies in state courts before coming to federal court. *See id.* Procedural default, then, typically does not apply unless a petitioner first exhausts his state remedies; otherwise § 2254(b) would bar the petition. But situations arise when a prisoner did not exhaust his state-court options, yet he can no longer pursue them. This occurs when, for example, a petitioner on collateral review does not appeal a trial court's decision.

In *O'Sullivan v. Boerckel*, the Supreme Court grappled with the interplay between § 2254(b) and procedural default and noted that petitioners could circumvent the exhaustion requirement by not presenting their arguments to the state court on collateral review. 526 U.S. 838 (1999). By doing so, prisoners could keep arguments in their back pocket for federal de novo review. *See id*. at 847–48. Sensing the problem, the *O'Sullivan* Court ruled that when a petitioner does not present his claims on state collateral review, he has not *properly* exhausted those claims, and thus he has procedurally defaulted. *See id*. at 848. "[W]hen a petitioner fails to present a claim in state court, but that remedy is no longer available to him, the claim is technically exhausted,

yet procedurally defaulted." *Atkins v. Holloway*, 792 F.3d 654, 657 (6th Cir. 2015); *Woolbright v. Crews*, 791 F.3d 628, 631 (6th Cir. 2015) ("When a petitioner failed to fairly present his claims to the state courts and no state remedy remains, his claims are considered to be procedurally defaulted."); *Jones v. Bagley*, 696 F.3d 475, 483–84 (6th Cir. 2012). This includes when a petitioner declines to seek discretionary review to the state's highest court. *O'Sullivan*, 526 U.S. at 848.

Here, Lawson presented Claim I to the state trial and appellate courts on collateral review. But Lawson never sought discretionary review from the Kentucky Supreme Court. And when a petitioner does not present a claim to the state's highest court— even when that court has discretionary review authority—the prisoner has not *properly* exhausted his claim. *O'Sullivan*, 526 U.S. at 846–48. Like the petitioner in *O'Sullivan*, Lawson did not properly exhaust these arguments to the state Supreme Court; he thus procedurally defaulted. *See id.*

But this does not end the analysis. A petitioner can overcome procedural default when he establishes "cause and prejudice" to excuse his error. *See Murray v. Carrier*, 477 U.S. 478, 496 (1986); *Woolbright v. Crews*, 791 F.3d 628, 631 (6th Cir. 2015). Lawson objects to the magistrate judge's ruling that he failed to overcome his procedural default. We start, then, with "cause."

### (a) Cause

In general, because "'a criminal defendant has no right to counsel beyond his first appeal in pursuing state discretionary or collateral review . . . any attorney error that led to the default of [a petitioner's habeas] claims in state court cannot constitute cause to excuse the default in federal habeas.'" *Woolbright*, 791 F.3d at 631 (alterations in original) (quoting *Coleman v. Thompson*, 501 U.S. 711, 756–57 (1991)). The Supreme Court modified this general rule in 2012 when it first announced the "*Martinez-Trevino*" exception. *See Martinez v. Ryan*, 566 U.S. 1 (2012); *Trevino v. Thaler*, 569 U.S. 413 (2013). In *Martinez*, the Court held that when "under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." 566 U.S. at 17. In *Trevino*, the Supreme Court expanded this exception to situations where a state's procedural system makes it "virtually impossible" for a defendant to bring an ineffective-assistance claim on direct appeal, even if state law does not actually prohibit the claim. 569 U.S. at 417.

Kentucky's collateral scheme fits into the *Martinez-Trevino* doctrine. *See Woolbright*, 791 F. 3d at 636. But the magistrate judge found that Lawson did not meet *Martinez-Trevino* because it "does not apply to lack of counsel at proceedings other than the initial collateral review proceeding." [DE 19, p. 21]. And because *Martinez-Trevino* "does not excuse counsel's failures at the appellate level," Lawson is not entitled to relief. [*Id.*].

This Court agrees with the magistrate judge. *Martinez-Trevino* applies to claims defaulted at the *initial* collateral proceeding but not beyond it. *See Martinez*, 566 U.S. at 16. The doctrine does not extend to "any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial." *Id.; see West v. Carpenter*, 790 F.3d 693, 699 (6th Cir. 2015); *Wallace v. Sexton* 570 F. App'x 443, 453 (6th Cir. 2014)("Ineffective assistance of counsel at this stage of the case cannot constitute cause to excuse the procedural default because it is not an initial-review collateral proceeding."). Thus, failure to raise a claim at the *appellate* state post-conviction proceeding does not implicate *Martinez-Trevino*. *Martinez-Trevino* is necessary only because, without it, *no* state court would ever hear IATC claims. *See West*, 790 F.3d at 697. But once the claim *is* presented to a state court on collateral review, the concern no longer exists.

Lawson's default occurred when he failed to seek discretionary review to the state Supreme Court. *See O'Sullivan*, 526 U.S. at 846–48. But Lawson did raise Claim I in his *initial* proceeding; he listed it as "Argument C" in his original state petition. [DE 1-2, pp 5–6]. There, Lawson claimed he was "deprived of effective assistance of counsel when counsel failed to make objection to reference of movant character and prior bad act's that Det. Riley, Karen Jones, and Barbara Flannelly testified to." [*Id.*]. Lawson then added additional arguments in a supplemental filing. [DE 1-3, p. 1]. And during state collateral proceedings, both the trial court and appellate court ruled on that specific argument. [DE 1-4, p. 7; 1-5, p. 6]. The trial court held that "much of the testimony to which Mr. Lawson refers goes directly to his possible motive for having committed the crimes herein—that being revenge for information supplied to law enforcement officers by the victim, and it appears to be certainly relevant and admissible." [DE 1-4, p. 7].

It is at this point that *Martinez-Trevino*'s application falls away. Thus, Lawson cannot establish "cause" to cure his procedural default, and this Court cannot consider this claim.

For these same reasons, the Court finds that Lawson also procedurally defaulted on the following claims: Claim II (failure to call alibi witnesses), Claim III (failure to adequately

investigate and present evidence of an alternative perpetrator),
and Claim VI (cumulative effect of errors).  Lawson presented each
of these claims on state collateral review but never to the state's
highest court.  [DE 1-2, p. 4-5, 42-43; DE 1-3, p. 14; DE 1-5].
This constitutes procedural default.  *O'Sullivan*, 526 U.S. at 848.

Indeed, Lawson does not object to the magistrate judge's
findings that Claims II and III were procedurally defaulted.  [DE
24].  As to Claim VI (cumulative error), Lawson objects and argues
that it "was never presented to the state court as the result of
the denial of counsel at the initial filing stage."  [DE 24, p.
9].  But it was.  Lawson listed as "Argument No. I" the "Cumulative
Effect of the Errors" in his initial filing.  [DE 1-2, p. 55].
There he argued "that the cumulative effect of the errors and
grounds for relief above and the prejudice caused as a result
deprived movant of a Fair Trial and Fair Sentence in violation of
movant's constitutional rights pursuant to the Fifth, Sixth, and
Fourteenth Amendments of the U.S. Constitution."  [*Id*. pp. 55-56].
And on initial review the state court held that "[n]othing
presented to the Court in the Defendant's RCr 11.42 Motion or the
Supplement has convinced this Court that his counsel's
representation fell below an objective standard of reasonableness
under prevailing professional norms."  [DE 1-4, p. 15].  Lawson
included his cumulative-error argument in his original state
proceedings, but he never asked the state Supreme Court to weigh

in.  Thus, he procedurally defaulted, and *Martinez-Trevino* does not cure the default.

The magistrate judge also found that these claims failed under § 2254(d) review and de novo review.  [DE 19, pp. 22–27].  This Court need not delve into those arguments because the case can be decided on procedural-default grounds.  *See Shelton v. McQuiggin*, 651 F. App'x 311, 313 (6th Cir. 2016).  And because he has procedurally defaulted, Lawson fails to establish relief on these claims.

### B. Remaining Claims: Claim IV and Claim V

Lawson's remaining arguments center on (1) counsel's failure to object to the improper allocation of peremptory challenges (Claim IV), and (2) counsel's failure to impeach Jones and Flannelly (Claim V).

We start with Claim V. But first, a clarification.  The magistrate judge found that Lawson's "claim related to Gary Flannelly was properly raised," in his RCr 11.42 motion and thus it was procedurally defaulted because it never came to the state Supreme Court.  [DE 19, pp. 40–41].  But as Lawson points out, Claim V does not involve Gary Flannelly; it involves *Barbara* Flannelly.  [DE 24, p. 7].

And Lawson never presented his *Barbara* Flannelly argument to the state courts. That constitutes procedural default. *See Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006) (ruling a "petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'"). But because Lawson defaulted Claim V at his *initial* collateral proceeding, *Martinez-Trevino* applies. *See Atkins v. Holloway*, 792 F.3d 654, 658 (6th Cir 2015). Yet a lack of counsel at the initial collateral review is only one of several steps Lawson must take to excuse procedural default. *See id*. The *Martinez-Trevino* exception is step one. It does not, by itself, establish cause—Lawson must also, at step two, demonstrate that he "has a substantial claim of IATC." These two questions "determine whether there is cause." *Atkins*, 792 F.3d at 660. The third question is whether Lawson suffered prejudice. *See id*. If he meets these three steps, the Court will consider the merits of his claim. *See Atkins*, 792 F.3d at 660; *Woolbright*, 791 F.3d at 637; *Sutton*, 745 F.3d 795–96.

As mentioned, Lawson meets step one because he was without counsel at the initial collateral proceeding. So *Martinez-Trevino* applies. But to establish that his underlying ineffective assistance claim is "substantial," Lawson must show that the claim "has some merit." *Martinez*, 566 U.S. at 14. The Supreme Court has not clarified what constitutes a "substantial" IAC claim. Nor

has the Sixth Circuit. In *Martinez*, the Supreme Court cited *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) in defining a "substantial claim." *Martinez*, 566 U.S. at 14. *Cockrell* discusses the standard for issuing a certificate of appealability, which suggested that the Supreme Court equated that standard with a "substantial" claim. *See Martinez v. Schriro*, No. CV 08-785-PHX-JAT, 2012 WL 5936566, at *2 n.2 (D. Ariz. Nov. 27, 2012) (ruling on remand that the "substantial" standard is the same as the one used for issuing a certificate of appealability). But the Sixth Circuit has rejected this approach, ruling that the certificate of appealability standard was not coterminous with the "substantial" IATC standard. *Atkins*, 792 F.3d at 660. The Circuit and Supreme Court have not otherwise expanded on what a "substantial" IAC claim is. *See Martinez*, 566 U.S. at 21 n.2 (Scalia, J., dissenting) (noting a lack of clarity in what constitutes a "substantial" claim).

In any event, the Court need not decide whether Lawson's IATC claim is substantial here because the framework for curing procedural default also requires, as a prerequisite, a determination of whether Lawson suffered prejudice. This is the upshot of the relationship between procedural default and IATC claims on habeas review: Because we ask whether petitioner suffered "prejudice" from his default, the Court must decide whether the *underlying* IATC claim passes merits review. After all, if the

underlying IATC claim is bunk, then the petitioner did not suffer prejudice. There is no way around it: Before reaching the merits, the Court must first examine the merits. In *Martinez*, the district court on remand recognized that "the reality is that this Court must evaluate trial counsel's performance to evaluate any of the three showings Petitioner must make." *Martinez*, 2012 WL 5936566, at *2. Thus, because a merits evaluation is embedded in the "prejudice" prong, the Court will consider the underlying claim.

### *(i)  Ineffective Assistance of Trial Counsel*

An ineffective assistance of counsel claim under *Strickland* requires that a prisoner show (1) that his "counsel's performance was deficient measured by reference to "an objective standard of reasonableness'" and (2) resulting prejudice, which exists where 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.'" *United States v. Coleman*, 835 F.3d 606, 612 (6th Cir. 2016) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984)).

"To establish deficient performance, a petitioner must demonstrate that counsel's representation 'fell below an objective standard of reasonableness.'" *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, 466 U.S. at

688)). Courts have "declined to articulate specific guidelines for appropriate attorney conduct and instead have emphasized that '[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" *Id.* (quoting *Strickland*, 466 U.S. at 688) (alterations in *Wiggins*). Still, a court's review of this prong includes a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Petitioner carries the burden of establishing that "'counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 687).

Prejudice results from a deficient performance when "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Harrington*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 693).

Meeting "*Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). The standard

"must be applied with scrupulous care, lest 'intrusive post-trial inquiry' threaten the integrity of the very adversary process the right to counsel is meant to serve." *Harrington*, 562 U.S. at 105. "Even under *de novo* review, the standard for judging counsel's representation is a most deferential one" because "[u]nlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge." *Id.*

In Claim V, Lawson contends that trial counsel was ineffective because she "not only failed to impeach Flannelly and Jones while they were testifying for the Commonwealth, but more importantly failed to demonstrate the impossibility of their story for the jury during closing argument." [DE 1, p. 58]. Lawson admits that "counsel cross-examined Flannelly and questioned her about the plea deal she received in exchange for testifying at trial." [*Id.* at p. 59]. Counsel also questioned Flannelly "regarding her testimony as to picking up Gary, what Gary looked like, and her various statements to police and how they had changed." [*Id.*]. Lawson also admits counsel cross-examined Jones and asked questions that "were similar to those posed to Flannelly, except that trial counsel questioned Jones at greater length about the events of June 15, 1998." [*Id.*].

But Lawson claims that trial counsel was ineffective because she never questioned Jones or Flannelly "about how it was possible to see Jenkins' truck parked at his brother's house that day if Jenkins never made it to his brother's house." [*Id*.]. Lawson argues that this was an error because Jenkins testified that he never went to his brother's house on the day of the fire. [*Id*. at pp. 58–59]. But Jones and Flannelly testified that "the events of that day all began because Leslie saw Jenkins' truck at Jenkins' brother's house." [*Id*. at p. 59]. And Lawson argues that if "Jenkins was never at his brother's house on June 15, 1998, the girls' story and credibility unravels quickly." [*Id*.].

Lawson further argues that his counsel failed at closing arguments. He contends that "counsel did nothing more than remind the jury that there was no one who could conclusively establish that Leslie or Harold burglarized or set fire to the Jenkins home and portray the girls as the real perpetrators of the crimes." [*Id*. at pp. 59–60]. Lawson also claims that during closing, counsel "told the jury that the girls knew Jenkins was not home because they had seen him earlier that day," and this "evidences [counsel's] complete failure to review the testimony presented during trial to make her argument to the jury." [*Id*. at p. 60]. Lawson's argument boils down to this: counsel provided

constitutionally deficient representation by failing to point out that Jenkins's testimony (that he had been home all day) was inconsistent with what Jones and Flannelly had testified to—that Lawson "initiated the drive to Jenkins's home upon seeing Jenkins's vehicle parked outside another house early that morning." [DE 19, p. 42].

The magistrate judge disagreed, and so does this Court.

The magistrate judge determined that "[e]ven under de novo review . . . Lawson has failed to establish that habeas relief is warranted." [DE 19, p. 41]. The magistrate judge found that trial counsel effectively cross-examined both witnesses at trial and obtained significant admissions from both. [*Id*.]. For example, as the magistrate judge pointed out, Jones admitted that she had a prior record, that Lawson never told her that he had started a fire, and that she did not know when Lawson received Jenkins's wrench and BB gun. [*Id*.]. Flannelly also admitted to having a criminal record, that she received a plea agreement in exchange for her testimony, and that she never saw either defendant break into the home. [*Id*. at pp. 41–42]. Flannelly further stated the she previously gave three different, inconsistent statements to police during the investigation. [*Id*., at p. 42].

In addition, the magistrate judge noted that, during closing argument, Lawson's counsel: (1) pointed out that no witness saw anyone start the fire, (2) "reiterate[ed] that Jones and Flannelly, the only individuals to place the defendants at the scene of the crime, had motive to testify against the defendants as they were facing multiple years of jail time for unrelated crimes," and (3) emphasized that the prosecution had not met its burden of proof.

To the pages of analysis that the magistrate judge devoted to reviewing this claim, Lawson makes *no* objections. [DE 24]. Lawson's only objection as to Claim V is the magistrate judge's finding that *Martinez-Trevino* did not apply. [*Id*. at p. 8]. But Lawson does not put forward *any* objection regarding the magistrate judge's extensive de novo review. And Lawson is required to file *specific* objections. *See Cole v. Yukins*, 7 F. App'x 354, 356 (6th Cir. 2001). He failed to do so.

Nonetheless, the Court agrees with the magistrate judge's determination that Lawson's claim fails under *Strickland*. First, Lawson did not show that his counsel's performance fell "below an objective standard of reasonableness." *Wiggins*, 539 U.S. at 521. As the magistrate judge determined, cross examination proved profitable: Both

Jones and Flannelly made significant concessions. That counsel did not ask every *possible* question that might have yielded favorable testimony does not render her performance deficient. The error must be "so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *Harrington*, 562 U.S. at 104. This is particularly true given the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Lawson has failed to come anywhere close to overcoming this strong presumption.

Second, Lawson cannot satisfy the prejudice prong of *Strickland*. The only reference to any prejudice is the statement that "there is a reasonable probability that the jury would have had a reasonable doubt as to Leslie's guilt and the outcome of the trial would have been different." [DE 1, p. 60]. But "[i]t is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Harrington*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 693). "[T]he question is not whether . . . it is possible a reasonable doubt might have been established if counsel acted differently." *Id.* at 111. "The likelihood of a different result must be substantial, not just conceivable." *Id.* Nothing Lawson presents supports the

inference that the odds of a different results are substantial had his counsel pointed out the inconsistencies.

Because Lawson's claim fails both prongs of *Strickland*, it cannot provide the basis for "prejudice" to cure his procedural default.

### *(ii) Claim IV: Peremptory Challenges*

In Claim IV, we find the first—and only—claim that is not subject to any procedural-default analysis. Lawson litigated this claim all the way to the Kentucky Supreme Court. In addition, Lawson agrees that the state courts made a ruling on the merits, thus triggering § 2254(d) review. [DE 1, p. 44].

Lawson's counsel failed to object to the trial court's "erroneous allocation of too few peremptory strikes." [*Id.* at p. 42]. The trial court gave Lawson nine peremptory strikes, but Kentucky law entitled him to eleven strikes. *See* RCr 9.40; *Springer v. Commonwealth*, 998 S.W.2d 439 (1999). On direct review, the Kentucky Supreme Court rejected Lawson's argument because it had not been properly preserved. *See Lawson v. Commonwealth*, 53 S.W.3d 534, 545 (Ky. 2001). On collateral review, Lawson argued his counsel's failure to object constituted ineffective assistance. [DE 1-2]. The trial court rejected his claim without holding an evidentiary

hearing. [DE 1-4]. The court of appeals reversed. [DE 1-5, p. 5]. The Kentucky Supreme Court declined discretionary review, and the case went back to the trial court.

On remand, the Laurel Circuit Court again denied Lawson's RCr 11.42 Motion. [DE 1-6]. And again, the court of appeals reversed. [DE 1-7]. This time, however, the Kentucky Supreme Court granted review, reversed the court of appeals and denied Lawson's RCr 11.42 Motion. [DE 1-8]. Lawson then filed the present petition for a writ of habeas corpus. [DE 1].

The Kentucky Supreme Court based its decision on three grounds: (1) the court of appeals improperly applied *Shane v. Commonwealth*, 243 S.W.3d 336 (Ky. 2007), (2) the court of appeals' opinion improperly made a *per se* reversal rule, and (3) Lawson failed to establish the prejudice prong under *Strickland*. [DE 1-8]. Here, we are concerned only with court's application of *Strickland*.

But this Court will *not* engage in a straightforward *Strickland* analysis; § 2254(d) requires more. *See Harrington*, 562 U.S. at 105. Lawson must show that the state court's opinion "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Williams v. Taylor,* 529 U.S. 362, 412–13 (2000) (O'Connor, J., opinion of the Court for Part II). This "statutory phrase refers to the holdings, as opposed to the dicta of [the Supreme Court's] decisions." *Id.* at 412. "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

Petitioners bear the burden of establishing a right to relief. *See Garner v.* Mitchell, 557 F.3d 257, 261 (6th Cir. 2009). The standard is "difficult to meet . . . because it was meant to be." *Harrington*, 562 U.S. at 102. "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. "[F]ederal judges are required to afford state courts due

respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods v. Donald*, 135 S.Ct. 1372, 1376 (2015) (per curiam). This is because "the purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction." *Greene v. Fisher*, 565 U.S. 34, 43 (2011). Thus, a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Section 2254 presents a particularly daunting hurdle in the ineffective-assistance-of-counsel context. *See Harrington*, 562 U.S. at 105. "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult" because both *Strickland* and § 2254(d) are "highly deferential." *Id*. And "when the two apply in tandem, review is 'doubly'" deferential. *Id*. The question for federal habeas courts in this context is "whether there is *any* reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*. (emphasis added). "A state court must be granted a deference and

latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id*. at 101.

In her recommended disposition, the magistrate judge found that Lawson failed to establish that the state court's opinion was contrary to or an unreasonable application of Supreme Court holdings. [DE 19, p. 40]. The magistrate judge relied on *Rivera v. Illinois*, 556 U.S. 148 (2009). [*Id*. at p. 39]. In *Rivera*, the Illinois trial court rejected a defendant's use of a peremptory challenge because the court believed he was attempting to remove a juror based on gender or race, in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986). *See Rivera*, 556 U.S. at 153. But that turned out to be wrong; there was no prima facie case that the defendant used his peremptory strike in a discriminatory fashion. *Id*. at 154–55. Thus, the trial court denied the defendant a peremptory challenge to which he was entitled. Defendant admitted that he could not demonstrate prejudice. *See id.* So he argued that the Supreme Court should find the loss of a peremptory challenge a "structural error" that requires automatic reversal. *Id*. at 156–57. The Supreme Court rejected this argument: "If a defendant is tried before a qualified jury composed of individuals not challengeable for cause, the loss of a peremptory challenge due to a state

32

court's good-faith error is not a matter of federal constitutional concern." *Id*. at 157.

Lawson objected to the magistrate judge's discussion of *Rivera*. He argues that *Rivera* was on direct review, not collateral attack, and that the *trial court* denied *Rivera* an additional peremptory challenge; it was not his *counsel's* error that led to fewer challenges. Lawson points out that, unlike here, *Rivera* did not involve an IATC claim. [DE 24]. Because this case involves an IATC claim on habeas review, Lawson argues, *Rivera* is distinguishable.

And in the IATC context, Lawson argues, the Court must presume prejudice. Otherwise, he points out, similarly situated prisoners could *never* demonstrate *Strickland*'s second prong because it would require either (1) testimony of a prospective juror who did not make the jury, but would have, had the other jurors been struck, and also would have voted to acquit Lawson or (2) testimony of the actual jurors as to their deliberations. [DE 1, pp. 46–47]. Both are impractical. The first option could not work because prospective jurors do not sit through trial and hear evidence. Whether that person would have voted to acquit Lawson is pure speculation. And how would the Court identify *who* would have been drawn to sit as a juror?

Option two fares no better.  Kentucky law prohibits examination of the jury as a ground for a new trial.  RCr 10.04.  Lawson cannot pry into the jury room to ask about verdict deliberations.

In Kentucky, automatic reversal occurs on direct review when peremptory challenges are not properly allocated at trial.  *See Robertson v. Commonwealth*, 597 S.W.2d 864, 865–66 (Ky. 1980) ("The requirement of a showing of actual prejudice effectively nullifies the requirements of the rule on allocation of peremptory challenges.") (quoting *Ky. Farm. Bureau Mut. Ins. Co. v. Cook*, 590 S.W.2d 875, 877 (1979)); *cf. Shane v. Commonwealth*, 243 S.W.3d 336, 340–41 (Ky. 2007) (holding that when the trial court requires defendant to use a peremptory challenge when the prospective juror should have bene struck for cause, reversal is required).  These cases, however, deal with *properly preserved* objections to misallocation of peremptory challenges.  *See Robertson*, 597 S.W.2d at 66.  And they confront arguments on *direct review* deciding matters of *state law*.

The situation here is much different.  This Court considers only a narrow question: whether the state court's ruling that Lawson failed to establish prejudice under *Strickland* based on his counsel's failure to object to a

34

misallocation of peremptory challenges constitutes a ruling that is contrary to or an unreasonable application of federal law as established by a holding of the Supreme Court. *See* 28 U.S.C. § 2254(d).  And on that question, the answer is "no".

Lawson argues that the state court's ruling violated *Strickland* because this case implicates a "structural error" (as opposed to a "trial error") for which courts can presume prejudice.  [DE 1, pp. 48-58].  A trial error is one that "occur[s] during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented." *Arizona v. Fulminate,* 499 U.S. 279, 307-08 (1991).  When reviewing trial errors, courts ask whether the mistake was harmless. *Id*.  Structural errors, however, affect the "entire conduct of the trial from beginning to end" and taint the "framework within which the trial proceeds, rather than simply an error in the trial process itself." *Id*. at 310. These structural errors "defy analysis by 'harmless-error' standards." *Id*.

Structural-error analysis stems from the idea that "some errors should not be deemed harmless" even when a defendant cannot demonstrate prejudice. *Weaver v. Massachusetts,* 137 S.Ct. 1899, 1907 (2017).  "The purpose of the structural error doctrine is to ensure insistence on certain basic, constitutional guarantees that

should define the framework of any criminal trial." *Id.* The Supreme Court recently identified three rationales for structural errors: (1) when the "right at issue is not designed to protect the defendant from erroneous conviction but instead protects some other interest," (2) when "the effects of the error are simply too hard to measure," and (3) when "the error always results in fundamental fairness." *Id.* at 1908. The first group includes the defendant's right to put on his own defense. *Id.* The second occurs when it is impossible to show that an error was harmless such as when a "defendant is denied the right to select his or her own attorney." *Id.* And the third results when, for example, "an indigent defendant is denied an attorney or if the judge fails to give a reasonable-doubt instruction." *Id.* In those instances, trial is always unfair. *Id.*

When a defendant raises a structural error on *direct review*, "a new trial generally will be granted as a matter of right." *Id.* at 1913. And even on collateral attack "there are a few situations in which prejudice may be presumed." *Williams*, 529 U.S. at 391. But prejudice is not *always* presumed when a petitioner brings an IATC claim on habeas review premised on a structural error, because "finality concerns are far more pronounced" in those situations. *Weaver*, 137 S.Ct. at 1913. In *Weaver*, for example, the defendant argued that the trial court erred by closing part of jury selection to the public. *See id*. at 1907. The defendant did not object at

trial but then raised an IATC claim on federal habeas review. *See id*. The Supreme Court noted that the closed proceeding implicated structural concerns, but the Court ruled that "*Strickland* prejudice is not shown automatically." *Id*. at 1911. "Instead, the burden is on the defendant to show either a reasonable probability of a different outcome in his or her case or, as the Court has assumed for these purposes . . . to show that the particular public-trial violation was so serious as to render his or her trial fundamentally unfair." *Id.* In short, the Court found that the high "systemic costs" of using habeas to remedy trial-level errors means courts should use a "different standard for evaluating a structural error depending on whether it is raised on direct review or raised instead in a claim alleging ineffective assistance of counsel." *Id*. at 1912. Errors can implicate structural concerns, but only some trigger a presumption of prejudice under *Strickland*.

This is where Lawson runs into problems. First, the Supreme Court has not held that state-supplied peremptory challenges implicate structural concerns. Nor has the Court held that denial of peremptory challenges requires a presumption of prejudice under *Strickland*. Quite the opposite. It is true that, at one point, the Supreme Court suggested that "[t]he denial or impairment of the right [to peremptory challenges] is reversible error without a showing of prejudice." *Swain v. Alabama*, 380 U.S. 202, 219

(1965).  But the Court in *Rivera* disavowed *Swain*: "The mistaken denial of a state-provided peremptory challenge does not, at least in the circumstances we confront here, constitute an error of that character."  556 U.S. at 161.

Second, Lawson identifies a single Sixth Circuit case—*United States v. McFerron*, 163 F.3d 952 (6th Cir. 1998)—for the proposition that the denial of a peremptory challenge is structural error.  But AEDPA requires Supreme Court holdings; Sixth Circuit precedent will not do.  And in any event, *McFerron*, (1) predates *Rivera*, and (2) dealt with peremptory challenges in the *Batson* context—i.e., when the trial court improperly found that defendant was discriminatorily using peremptory strikes.  This is far from the case here where the trial court simply miscalculated the number of preemptory strikes for Lawson.

Third, Lawson presents no other evidence of prejudice.  He identifies the jurors he would have struck, but he does nothing to demonstrate how his trial was tainted.  And "[i]f a defendant is tried before a qualified jury composed of individuals not challengeable for cause, the loss of a peremptory challenge due to a state court's good-faith error is not a matter of federal constitutional concern."  *Rivera*, 556 U.S. at 157.  This is especially true because "a State may decline to offer [peremptory

challenges] at all." *Id*. Without a showing of prejudice, Lawson cannot satisfy *Strickland*.

In sum, this Court would have to travel far afield from current Supreme Court precedent to arrive at Lawson's desired destination. That's a journey that § 2254(d) prohibits, and it is a road this Court leaves untaken. The state court's ruling was not contrary to or an unreasonable application of federal law. Thus, this claim fails, and Lawson is not entitled to a Writ of Habeas Corpus.

### C. Evidentiary Hearing and Certificate of Appealability

Finally, Lawson objects to the magistrate judge's recommendation to deny an evidentiary hearing and certificate of appealability.

### (i) Evidentiary Hearing

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petitioner's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 560 U.S. 465, 474 (2007). When "the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id*. As the magistrate judge found, Lawson

has not identified any additional evidence he could present at an evidentiary hearing. [DE 19, p. 47]. Lawson does not propose any potential evidence that would entitle him to overcome his procedural default. He has made no factual allegations that, "if true would entitle [him] to federal habeas relief." *Schriro*, 560 U.S. at 474. He is not entitled to an evidentiary hearing.

### (ii) Certificate of Appealability

"A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). When a district court denies a petitioner's claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

Lawson has not made a substantial showing under § 2253. Reasonable jurists would not find the Court's determination

debatable or conclude that Lawson's petition deserves further consideration. The Court **denies** Lawson's request for a certificate of appealability.

## IV. Conclusion

For the reasons stated here, **IT IS ORDERED** as follows:

(1) Lawson's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 [DE 1] is **DISMISSED WITH PREJUDICE;**

(2) Lawson's request for an evidentiary hearing is **DENIED**;

(3) Lawson's request for a certificate of appealability is **DENIED**;

(4) Judgment is entered in favor of Respondent;

(5) The Clerk **SHALL STRIKE THIS MATTER FROM THE ACTIVE DOCKET;**

This the 26th day of July, 2018.



Signed By:

*Joseph M. Hood*

Senior U.S. District Judge